Jean E. Faure
Jason T. Holden
Faure Holden Attorneys at Law, P.C.
615 Second Avenue North, Suite 201
P.O. Box 2466
Great Falls, MT 59403
Tel.: (406) 452-6500
Fax: (406) 452-6503

Matthew T. Collins (*Pro Hac* Counsel)
800 LaSalle Avenue, Suite 1900
Minneapolis, Minnesota 55402
Tel.: 612-359-7600
Fax: 612-359-7602
*Attorneys for Martin Construction, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| CITY OF WOLF POINT, MONTANA,<br>      Plaintiff,<br>   vs.<br><br>MARTIN CONSTRUCTION, INC.,<br>      Defendant/Third-Party<br>      Plaintiff<br><br>   vs.<br><br>AerRESEARCH, INC., AerRESEARCH, LLC, and PARSONS ENGINEERED PRODUCTS, INC.,<br><br>      Third-Party Defendants/<br>      Counter-Claimants. | Cause No.: CV-10-28-GF-SEH<br><br>**MARTIN CONSTRUCTION, INC.'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF CITY OF WOLF POINT** |

## INTRODUCTION

The City of Wolf Point ("Wolf Point") entered into a $1,273,722.40 construction contract agreement (the "Agreement") with Martin Construction, Inc. ("Martin Construction") for the construction of a "Wolf Point Aerated Lagoons" project. Martin Construction is a general contractor. As a general contractor, Martin Construction builds things, including heavy highway construction, oil field construction services, landfills and lagoons constructions, railroad siding and spur construction, airport runway construction, site developments, dams, demolition, reclamation, and culvert installation. Martin Construction does not sell and warrant aeration systems under the Montana Uniform Commercial Code ("UCC").

In this case, Wolf Point brings four causes of action (Counts I, II, III, and IV) under various provisions of Article 2 of the Montana UCC. As this Court knows, Article 2 of the Montana UCC applies to the sale of goods. It is undisputed that Martin Construction is not a seller of goods, but a provider of general construction services. Because the Agreement's purpose is not for the sale of goods, but the construction of an aerated sewage lagoon, the claims brought by Wolf Point under the Montana UCC are without merit and Martin Construction requests that the Court grant its motion for summary judgment on Counts I, II, III, and IV of the Complaint.

## BACKGROUND

Filed with this Brief are Martin Construction's Statement of Uncontroverted Fact and the Affidavit of Kurtis Martin. Three material and undisputed facts demand repeating here:

1. The Agreement between the parties defined what Martin Construction provided to the project in exchange for payment:

> Work- The entire construction or the various separately identifiable parts thereof required to be provided under the Contract Documents. Work includes and is the result of performing or providing all labor services, and documentation necessary to produce such construction, and furnishing, installing, and incorporating all materials and equipment into such construction, all as required by the Contract Documents.

*See* Martin Construction's Statement of Uncontroverted Fact, ¶ 10.

2. Wolf Point agreed to pay Martin Construction $1,273,722.40 for performance of the work under the Agreement. *See* Martin Construction's Statement of Uncontroverted Fact, ¶ 6.

3. The unit price for the Aeration System that is the subject of this action was $117,936.00, or 9.3% of the total Agreement price. *See* Martin Constructions Statement of Uncontroverted Fact, ¶ 7.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if there are no genuine issues of material fact and, if viewing the evidence in the light most favorable to the non-moving

party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cleary v. News Corp.*, 30 F.3d 1255, 1259 (9th Cir. 1994). Once a summary judgment motion is made and supported, the non-moving party may not rest on the pleadings, but must set forth specific facts showing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n. 3 (1986); *see also Potera-Haskins v. Gamble*, 519 F. Supp.2d 1110, 1113 (D. Mont. 2007).

"The question whether a contract is predominantly for goods or services is generally one of fact." *BMC Industries, Inc. v. Barth Industries, Inc.*, 160 F.3d 1322, 1331, (11th Cir. 1998) (citing *Allmand Assocs., Inc. v. Hercules Inc.*, 960 F. Supp. 1216, 1223 (E.D. Mich. 1997). "When there is no genuine issue of material fact concerning the contract's provisions, however, a court may determine the issue as a matter of law." *See id.*

## DISCUSSION

### I. THE COMPLAINT.

Wolf Point's Complaint alleges six causes of action. *See* Complaint, pp. 4-6. The first four counts of the Complaint are based on causes of action arising under the Montana UCC.

Count I of the Complaint asserts a cause of action for breach of the implied warranty of merchantability. This cause of action arises under Mont. Code Ann. § 30-2-314, which is based on UCC Section 2-314. *See* Mont. Code Ann. § 30-2-

314, subd. (1) ("Unless excluded or modified (30-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.")

Count II of the Complaint asserts a claim for breach of the implied warranty of fitness for a particular purpose. This cause of action arises under Mont. Code. Ann. § 30-2-315, based on UCC Section 2-315. *See* Mont. Code. Ann. § 30-2-315 ("Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.")

Count III of the Complaint, which alleges the supply of non-conforming goods, arises under Mont. Code. Ann. § 30-2-313, which is based upon UCC Section 2-313. This count by its terms alleges that Martin Construction provided an express warranty that the goods supplied would conform to the contract, and not defective services, which further supports the fact that the claim arises out of the UCC. *See* Mont. Code. Ann. § 30-2-313, subd. (1) ("(1) Express warranties by the seller are created as follows: (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation

or promise. (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description. (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.").

Count IV of the complaint alleges that Martin Construction impliedly warranted that the project and its components were not defective, and that Martin breached this implied warranty by supplying defective goods. Implied warranties arise under Mont. Code Ann. § 30-2-314. Count IV also refers to goods, not to services.

Because all four of these counts of the Complaint originate under the UCC, Martin Construction is entitled to summary judgment if the Montana UCC does not apply.

## II. CONTRACTS INVOLVING GOODS AND SERVICES.

Montana has adopted the UCC. *See generally* Mont. Code. Ann. Title 30. The Montana UCC, Section 30-2-102 provides: "Unless the context otherwise requires, this chapter applies to transactions in goods . . . ." *Id.* Although Montana state courts have not interpreted this provision, the United States District Court for the District of Montana has held that "Although a contract involves a transaction in goods, it is removed from Article II if the sale of goods is incidental to the

rendition of services." *See Montana Millwork, Inc. v. Caradco Corp*, 648 F. Supp. 88, 90 (D. Mont. 1986) (citing *RRX Industries, Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 546 (9th Cir. 1985).

In *Montana Millwork*, the court concluded that a determination of whether Article II applies is whether the sale of goods or services "predominates." *Id.* The *Montana Millwork* approach is consistent with the approach of the majority of courts--generally, where the rendition of services predominates, the UCC does not apply to any part of the contract. *See* 1 JAMES J. WHITE & ROBERT S. SUMMERS, *Uniform Commercial Code* § 9-2 (5th ed. 2006). WHITE AND SUMMERS note that "[m]ost courts . . . use the predominant factor test in deciding whether the Code applies to a particular contract." *Id.* "If the hybrid transaction is predominantly for the sale of goods, then the UCC will apply to the entire transaction, including the services portion." *Id.* If the UCC does not apply, then the warranties based upon the UCC upon which the City relies in its Complaint are inapplicable. *See WXON-TV, Inc. v. A.C. Nielsen Co.*, 740 F. Supp. 1261, 1267, (E.D. Mich. 1990) *(*concluding that UCC warranties did not apply where the contract was not for sale of goods).

In this case, the Agreement between Martin Construction and Wolf Point required the provision of both goods and services for the construction of the project. The Unit Price Schedule incorporated into the Agreement specified a

number of components which made up the total amount of work under the Agreement. The majority of the work provided by Martin Construction involved services: (1) mobilization ($103,000); (2) site demolition ($36,050); (3) clearing and grubbing ($2,575); (4) unclassified excavation ($30,642.50); (5) borrow excavation ($181,075.50); (6) construction of aeration building ($44,493.50).[1] *See* Affidavit of Kurtis Martin, ¶ 6, Ex. 3.

Admittedly, Martin Construction did provide some goods to construct the project. The unit price for the Aeration System that is the subject of this action, however, was valued at $117,936.00, or 9.3% of the total Agreement price. *See* Affidavit of Kurtis Martin, ¶ 8, Ex. 3. Therefore, on summary judgment, the Court can examine the Agreement and determine whether the provision of goods or whether the provisions of services predominated the parties' Agreement. If the Court determines that services predominated the parties' Agreement, summary judgment is appropriate.

### III. CONSTRUCTION SERVICES PREDOMINATED THE PARTIES' AGREEMENT.

Based on a review of the Agreement and under the Montana UCC, the Court must determine whether goods or services "predominated" the work performed by Martin Construction. In *Montana Millwork*, the court said that when determining

---

[1] These are just examples of the services provided by Martin Construction. Only a cursory review of the Unit Price Schedule demonstrates that services predominated the work provided to Wolf Point under the Agreement.

whether a contract is for goods or services, "the Court must look to the essence of the contract." 648 F. Supp. at 90. Other Ninth Circuit cases to examine the issue have also looked to the "purpose" or "essence" of the contract."[2] *See, e.g.*, *United States v. City of Twin Falls*, 806 F.2d 862, 871 (9th Cir. 1986), *overruled on other grounds,*[3] (comparing contractual provisions for the provision of goods and services and concluding that the predominant purpose of the contract was for the sale of goods with a necessary but incidental services component).

Although some Ninth Circuit cases have concluded that hybrid contracts are covered by the UCC, despite the fact that services were included, these cases are easily distinguishable from the case at bar. For example, in *U.S. ex rel. Bartec Industries, Inc. v. United Pacific Co.*, 976 F.2d 1274, 1277 (9th Cir. 1992), the court concluded that a contract for the provision of steel with incidental services was covered by the UCC. The court noted that "Bartec did not agree to perform

---

[2] Other courts look to the relative costs of the services and goods, an approach which is not inconsistent with looking at the "essence" of the contract. *See, e.g., Princess Cruises, Inc. v. General Elec. Co.*, 143 F.3d 828, 833, (4th Cir. 1998) ("The Fourth Circuit has deemed the following factors significant in determining the nature of the contract: (1) the language of the contract, (2) the nature of the business of the supplier, and (3) the intrinsic worth of the materials."). *See also Lincoln Pulp & Paper Co. v. Dravo Corp.*, 445 F. Supp. 507 (D. Me. 1977); *Van Sistine v. Tollard*, 291 N.W.2d 636 (Wis. App. 1980); *Colorado Carpet Installation, Inc. v. Palermo*, 668 P.2d 1384 (Colo. 1983); *Upchurch Plumbing, Inc. v. Greenwood Utilities Com'n*, 964 So. 2d 1100 (Miss. 2007) (UCC did not apply to breach of contract case involving defective combustion turbine control system, where only 40% of the contract dealt with hardware, while 60% of the contract dealt with services, including the testing and design of the turbine).

[3] Citing *Bonebrake v. Cox*, 499 F.2d 951, 958 (8th Cir. 1974), the case first articulating the predomination test.

9

any labor at the Barking Sands site or to assist Simpson in any way with the construction of the hangar and office building structures." The court also noted that the case before it was distinguishable from a situation where the contract was for the construction for a completed improvement. *Id.* at 1277 n.2.

In *City of Twin Falls*, the court concluded that a contract for the purchase and installation of equipment for the treatment of waste water was a contract for the sale of goods. 806 F.2d at 871. In *Twin Falls,* however, the contract was not for the construction of the entire facility, but for the supply and installation of the equipment. *Id.* at 865. No services other than provision installation are mentioned in the opinion. *Id.* Therefore, while Ninth Circuit cases indicate that contracts in the construction context can fall under the UCC, such contracts are only for the installation of stand-alone goods, with some incidental necessary service, and not for construction of an overall facility such as the aeration lagoons at issue in this case.

Where construction of a facility is implicated as here, cases from the Ninth Circuit uniformly conclude that the UCC does not apply, and so too the implied warranties afforded under the UCC. *See Miller Farms Nursery, Inc. v. Nedegaard Const. Co. Inc.*, 68 Fed. App'x. 845, 846, 2003 WL 21500052, at * 1 (9th Cir. 2003). In *Miller Farms,* the court concluded that the UCC did not apply to a contract to "pave a parking lot at the Casino, which included preparation of the

ground for paving, installation of curbs, bringing water to the casino building, and installing a septic system, retaining walls, landscaping and a sprinkler system." *Id.* Notwithstanding the necessity of acquiring and installing components for the septic and sprinkler systems, and the components for the retaining walls, and the fact that such components cost more than the other construction, the court concluded that the contract was one for services, and held that the UCC did not apply. *Id.*

The following Ninth Circuit district court cases have reached the same conclusion. *Platt Elec. Supply, Inc. v. Menlo Logistics, Inc.*, 2002 WL 31466490, at *3 (D. Or. 2002) (concluding that the purchase of computer equipment for a warehousing system did not render the contract one for the sale of goods); *Prowler, LLC v. York Intern. Corp.* 2007 WL 2363046, at *8 (W.D. Wash. 2007) (concluding that "the sale of piping, coils, and components of the gauge assembly (some of which do not appear on the invoices) was incidental to the primary purpose of the contract, which was to provide installation services.").

Cases from other jurisdictions are consistent with those of the Ninth Circuit.[4] *See, e.g.*, *BMC Industries, Inc. v. Barth Industries, Inc.*, 160 F.3d at 1331, n. 15

---

[4] Several state cases reach the same conclusion. *See Schenectady Steel Co., Inc. v. Bruno Trimpoli Gen. Cost. Co., Inc.*, 43 A.D.2d 234, 350 N.Y.S.2d 920 (N.Y. App. Div. 1974) (concluding that a contract to furnish and erect steel for a bridge was a service contract outside the UCC) *Van Sistine*, 291 N.W.2d at 636 (concluding that the predominant factor in a contract between a siding contractor and a homeowner was the furnishing of services); *Clark v Enneking*, 701 P.2d 311(Idaho Ct. App. 1985) (contract to connect water and sewer lines to new house was agreement for performance of services, rather than sale of goods); *Higgins v Lauritzen*, 530 N.W.2d 171 (Mich. Ct. App. 1995) (overall thrust or purpose of parties' agreement for drilling of

11

("Construction contracts, however, such as those for construction of a swimming pool or house, are usually held to be transactions in services. Although construction contracts typically involve materials that qualify as goods (such as concrete or roofing tiles, for example), the services element of such contracts is usually held to be dominant."); *Bamcor LLC v. Jupiter Aluminum Corp.*, 767 F. Supp.2d 959 (N.D. Ind. 2011) (contract for installation and repair of manufacturing equipment was primarily for services); In *re Sunshine-Jr. Stores, Inc.*, 240 B.R. 788 (Bankr. M.D. Fla. 1999) (contract between owner of convenience store and contractor for removal of old gasoline tanks from store, installation of new tanks, and construction of self service islands and canopy was in nature of contract for performance of services); *Inhabitants of City of Saco v. General Elec. Co.*, 779 F. Supp. 186, 197 (D. Me. 1991) (concluding that a contract to construct and equip a waste-to-energy facility which incorporated materials was a design and construction agreement not covered by the UCC because the finished product was not moveable); *Lincoln Pulp & Paper Co. v. Dravo Corp.*, 436 F. Supp. 262, 275 (D. Me. 1977) (concluding that contract to "to furnish project management, process and design engineering, procurement, construction management, start-up assistance and materials as well as auxiliary equipment including evaporators and precipitators and construction of a chemical recovery boiler . . . ." was a contract

---

water well and installation of water pump was not acquisition of goods, but rather was rendition of services).

for services.); *AES Puerto Rico, L.P. v. Alstom Power, Inc.*, 429 F. Supp.2d 713, 719 (D. Del. 2006) (concluding that contract to furnish and construct two boilers and pollution-control equipment, was "much more than merely incidental or collateral to the sale of goods" and that the UCC did not apply).

Commentators also conclude that construction contracts constitute service contracts, not goods contracts. *See* 1 JAMES J. WHITE & ROBERT S. SUMMERS, *Uniform Commercial Code* § 9-2(a) ("Most courts find construction contracts to be primarily for services."); 2 STEVEN G.M. STEIN, *Construction Law* § 4.01(1) (a) (2010) ("many courts remain reluctant to apply UCC principles to construction contracts. This is because the duties and responsibilities of the parties are not as status and immediately ascertainable from the face of construction contracts as they are for contracts to supply goods."). BRUNER & O'CONNOR also conclude that general contractors provide services, rather than goods. *See* BRUNER & O'CONNOR, *Construction Law* § 9:10 (2011).

The Agreement to construct the Wolf Point Aerated Lagoons project by Martin Construction cannot be considered a contract for the sale of goods as a matter of law. Martin Construction is a general contractor who built the $1.2 million project that included massive excavation, construction of buildings, and numerous other services that constituted all of the work under the Agreement. A simple review of the Agreement leads to the conclusion that Martin Construction

13

and Wolf Point did not enter into a contract for the sale of goods. Because the Agreement was not for the sale of goods, the Montana UCC does not apply and Martin Construction is entitled to summary judgment on Counts I, II, III, and IV of the Complaint.

## CONCLUSION

Based on the forgoing, Martin Construction requests summary judgment on Counts I, II, III, and IV of the Complaint.

DATED this 21st day of October, 2011.

        /s/ Jean E. Faure
Jean E. Faure
Faure Holden Attorneys at Law, P.C.
*Attorney for Defendant/Third-Party Plaintiff*
*Martin Construction, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d) (2) of the Local Rules of the U.S. District Court for the District of Montana, I certify that this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double spaced; and the word count calculated by Microsoft Word, is 2,853 words, excluding Caption, Certificate of Service and Certificate of Compliance.

DATED this 21st day of October, 2011.

/s/ Jean E. Faure
Jean E. Faure
Faure Holden Attorneys at Law, P.C.
*Attorney for Defendant/Third-Party Plaintiff*
*Martin Construction, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of October, 2011, a copy of the foregoing document was served on the following by CM/ECF delivery:
U.S District Court, Great Falls Division

Harlan B. Krogh / Eric Edward Nord
CRIST, KROGH & NORD, LLC
The Securities Building
2708 First Avenue North, Suite 300
Billings, MT 59101

Thomas A. Marra
MARRA, SEXE, EVENSON & BELL, P.C.
P. O. Box 1525
Great Falls, MT 59403-1525

/s/ Jean E. Faure
Jean E. Faure
Faure Holden Attorneys at Law, P.C.
*Attorney for Defendant/Third-Party Plaintiff*
*Martin Construction, Inc.*